IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:23-CR-27 (RDA) |
| KYLE RAMSTETTER, | Count 1: Conspiracy to Commit Honest Services Wire Fraud (18 U.S.C. § 1349) |
| Defendant. | |

### Criminal Information

The United States charges that:

*Introduction*

At all times relevant herein, unless a specific date is noted:

1. Company 1 was a Denver, Colorado-based commercial real estate and development company. B.W. was Company 1's Chief Executive Officer.

2. Since in or around 2018, the Victim Company executed leases with Company 1 for nine real estate parcels in Northern Virginia, within the Eastern District of Virginia. The total approved to be spent for these deals was approximately $415.5 million.

3. In or around November 2017, the defendant, KYLE RAMSTETTER ("RAMSTETTER"), began working at Company 1 as a project manager, and was soon promoted to Director of Development. In that role, RAMSTETTER was responsible for managing the Northern Virginia real estate development deals involving the Victim Company and Company 1, on behalf of B.W.

1

4. C.H.K. was an employee of the Victim Company overseeing real estate development in Northern Virginia for the Victim Company, including the nine real estate development deals involving Company 1.

5. Until in or about June 2019, C.N. was a Senior Manager of Real Estate for the Victim Company who supervised C.H.K. C.N. was also involved in real estate transactions on behalf of the Victim Company in Northern Virginia.

6. C.V.K. was C.H.K.'s brother and a long-time friend of B.W.

7. R.A. was an attorney who practiced law in Colorado.

## Count 1
**(Conspiracy to Commit Honest Services Wire Fraud)**

8. From in or around December 2017 and continuing through in or around September 2019, in the Eastern District of Virginia and elsewhere, defendant RAMSTETTER, B.W., C.N., C.H.K., C.V.K., R.A., and others known and unknown, did knowingly conspire and agree with each other to commit honest services wire fraud, that is: having devised and intending to devise a scheme and artifice to defraud the Victim Company of its right to the honest services of its employees through bribery or kickbacks, to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Sections 1343 and 1346, and all in violation of Title 18, United States Code, Section 1349.

*Purpose, Manner, and Means of the Conspiracy*

9. The purpose of the conspiracy was to engage in a kickback scheme through which B.W. and Company 1 made kickback payments to employees of the Victim Company, C.N. and C.K., which payments RAMSTETTER helped to facilitate, in exchange for those employees

2

steering real estate development deals in the Eastern District of Virginia and elsewhere from the Victim Company to Company 1.

10. The manner and means by which the defendant and others would and did carry out the conspiracy included, but were not limited to, the following:

    a. B.W. and Company 1 made disguised kickback payments to C.N. and C.H.K., disguised as "referral fees" from Company 1 to an entity called the Villanova Trust, which was ostensibly controlled by C.V.K. but was actually established and maintained for the benefit of C.N. and C.H.K.;

    b. The conspirators concealed the kickback payments by the use of various shell entities that had been established by R.A.;

    c. RAMSTETTER facilitated the kickback payments through interstate telephone and other electronic communications in which he provided inside information to C.N. and C.H.K. about Company 1's development deals with the Victim Company and alerted C.N. and C.H.K. to forthcoming kickback payments that they would receive; and

    d. In exchange for the kickback payments, C.N. and C.H.K. unlawfully directed, influenced, and exerted pressure on the Victim's Company's internal processes for the purpose of steering real estate development deals in Northern Virginia to B.W. and Company 1.

*Acts in Furtherance of the Conspiracy*

11. In furtherance of the conspiracy, and to effect the objects thereof, the following acts, among others, were committed in the Eastern District of Virginia and elsewhere:

   a. On or about July 27, 2018, RAMSTETTER messaged C.N. on WhatsApp, an end-to-end encrypted messaging service, stating: "Hoping to get wires out to you today (before cut off), at worst you'll have $1,297,011.18 first thing tomorrow." C.N. replied to that message: "Beauty thanks man."

   b. On or about November 5, 2018, RAMSTETTER messaged C.H.K. on WhatsApp: "We officially own Manassas. I'll get your money wired out tomorrow." C.H.K. replied to that message: "Damn boy be good!!"

   c. On or about December 7, 2018, RAMSTETTER messaged C.H.K. on WhatsApp: "$1,061,160 will be wired today." C.H.K. replied to that message: "Have I told you lately? . . . That I Love You. 😊."

   d. On or about December 11, 2018, RAMSTETTER and C.N. had the following WhatsApp exchange, while both RAMSTETTER and C.N. were located in the Eastern District of Virginia:

   > RAMSTETTER: "Also I forgot to confirm, did the wire come through last week?"
   >
   > C.N.: "Yep lean and mean - you can expect [$50,000]"
   >
   > C.N.: "Little Xmas bonus"
   >
   > RAMSTETTER: "You kidding me!?! Thank you a thousand times over."

e. On or about December 12, 2018, C.N. sent the following message to RAMSTETTER on WhatsApp, while RAMSTETTER was still in Northern Virginia: "Hey - check your acct - money should be there / also sign the W9."

f. In total, from in or around December 2017 through in or around September 2019, Company 1 and B.W. paid $5,113,133.84 in kickback payments to C.N. and C.H.K., via wire transfers to the Villanova Trust. All of these kickback payments were associated with real estate developments deals in Northern Virginia that C.N. and C.H.K. steered from the Victim Company to B.W. and Company 1.

g. During RAMSTETTER's participation in the kickback conspiracy, he received approximately $300,000 in additional compensation associated with the development fees paid on Company 1's real estate development deals involving the Victim Company, over and above his standard Company 1 base salary.

h. In addition, RAMSTETTER received $150,000 from one of the shell entities that was established for C.N. and C.H.K.'s benefit, via two direct wire transfers of $100,000 and $50,000 sent on October 9, 2018, and December 12, 2018, respectively. These wire payments totaling $150,000 were made in exchange for RAMSTETTER providing inside information to C.N. and C.H.K. about Company 1's development deals with the Victim Company and keeping C.N. and C.H.K. updated on the status of the disguised kickback payments from Company 1 and B.W. to C.N. and C.H.K., via the supposed "referral fees" paid to the Villanova Trust.

(All in violation of Title 18, United States Code, Section 1349.)

## FORFEITURE NOTICE

Defendant KYLE RAMSTETTER is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in this Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

The assets subject to forfeiture include, but are not limited to, the following: (1) a monetary judgment in the amount of $450,000, representing proceeds the defendant obtained as a result of the violations described in this Criminal Information and which sum shall not be offset by the other assets listed in this paragraph; (2) UMB Bank account # 9872390059 in the name of WHITE PEAKS CAPITAL LLC MMDA ACCOUNT; and (3) UMB Bank account # 9872390172 in the name of WHITE PEAKS CAPITAL LLC OPERATING ACCOUNT.

Pursuant to 21 U.S.C. § 853(p), defendant KYLE RAMSTETTER shall forfeit substitute property, if, by any act or omission of his, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p); and Fed. R. Crim. P. 32.2.)

Raj Parekh
Acting United States Attorney

By: *(signature)*
Russell L. Carlberg
Heidi B. Gesch
Assistant United States Attorneys